559 A.2d 19

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Nicholas KARABIN, Appellee.**

Supreme Court of Pennsylvania.

Argued May 10, 1988.

Decided March 6, 1989.

Reargument Denied June 19, 1989.

Ernest D. Preate, Jr., Dist. Atty., Francis Sempa, Asst. Dist. Atty., for appellant.

Todd J. O'Malley, George V. Lynett, Scranton, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

ZAPPALA, Justice.

The issue presented by this case is whether a death sentence which has been vacated because of insufficient evidence to support the aggravating circumstance of 42 Pa.C.S. § 9711(d)(9) should be reinstated when a defendant is again convicted of a crime for which his original conviction was overturned. We hold that a conviction used as an aggravating circumstance under § 9711(d)(9) which is valid at the time of the sentencing proceeding, but is later reversed and vacated, renders the jury's finding of that aggravating circumstance invalid. We hold further that a subsequent conviction for the same crime may not be used to revive the invalid aggravating circumstance.

On August 8, 1979, Appellee Nicholas Karabin, Jr. was found guilty by a jury of murder of the first degree relating to the death of Clarence Doolittle, a fellow inmate who was incarcerated at the time of his death in the Lackawanna County Jail. The Commonwealth sought the imposition of the death penalty and a sentencing hearing was conducted before the jury on the following day. Evidence was introduced by the Commonwealth to establish: (1) the defendant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9), and (2) the defendant had been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense, 42 Pa.C.S. § 9711(d)(10).

The Commonwealth introduced the testimony of Captain Frank Roche of the Scranton Police Department, who identified Karabin as the individual charged in two indictments handed down by a Lackawanna County grand jury for the murder of Gerald Walsh on March 17, 1978 and aggravated assault for the shooting of Robert Christiano on April 6, 1978. Nicholas Hoffman, the Clerk of Courts of Dauphin County, identified certified copies of the official docket entries entered in both of those cases. The Commonwealth's Exhibit No. 3, a transcript from the trial of the murder charge, indicated that Karabin had been found guilty of first degree murder by a jury on December 14, 1978 for which he received a life sentence on March 27, 1979. Exhibit No. 4, a copy of the docket entries in the aggravated assault charge, indicated that Karabin had changed his plea and had plead guilty on January 17, 1979 to that charge. On March 27, 1979, he had been sentenced to undergo a five to ten year term of imprisonment. No other evidence of aggravating circumstances was introduced by the Commonwealth.

Karabin testified on his own behalf during the sentencing phase, describing to the jury how he was adversely affected by the disintegration of his marriage and his character prior to that time. Unclear as to whether the death penalty statute would permit cross-examination of witnesses during the sentencing phase, counsel for both the Commonwealth and Karabin decided not to conduct any cross-examination. Closing arguments were made by counsel.

The jury imposed the death sentence, unanimously finding one or more aggravating circumstances which outweighed any mitigating circumstances. The jury's verdict slip stated that the aggravating circumstances were (1) a history of felonies, and (2) already serving a life sentence.

Motions in arrest of judgment and for a new trial were filed by Karabin on August 15, 1979. Subsequently the presiding judge at the trial, Judge Wickersham, assumed the bench of the Superior Court and Judge John Dowling of

the Dauphin County Court of Common Pleas was eventually assigned to dispose of the post-trial motions.

On July 19, 1983, Judge Dowling entered an order vacating the death sentence and imposing a sentence of life imprisonment. Judge Dowling rejected the Appellee's arguments based on allegations of trial error, but concluded that the aggravating circumstance of a significant history of felony convictions involving the use or threat of violence to the person was invalid. The basis for his conclusion was that the Appellee's collateral conviction for aggravated assault underlying the jury's finding of that aggravating circumstance had been vacated.

The trial judge's statement of the events which gave rise to his conclusion and his reasoning in support thereof follows:

[W]e have the very disturbing situation of the introduction of the "conviction" for aggravated assault, amplified by the indictment as involving the shooting in the neck of one Robert Christiano. The clerk of Court testified from a certified copy of the docket entry that on January 17, 1979, the defendant in open court pled guilty; and on March 27, 1979, was sentenced to undergo imprisonment for not more than ten, nor less than five years. There was no objection to this testimony and no cross-examination concerning it.

This is extraordinary and almost incredible, when one examines what actually occurred as evidenced by the complete docket entries. Karabin did, in fact, plead guilty on January 17, 1979, and was sentenced on March 27, 1979; yet on the same day he was sentenced, a petition for allowance to withdraw his guilty plea and substitute a plea of not guilty was filed. On April 9, 1979, the Commonwealth answered the petition and on April 25, 1979, the trial court denied the petition. This denial was appealed to the Superior Court on May 16, 1979. All of these events transpired before the instant trial and all were obviously within knowledge of the defendant's trial counsel and the prosecuting attorney.

However, not one word of this is mentioned before a jury, which is about to deliberate on whether to sentence the defendant to death or life imprisonment. We hasten to add that the trial Judge who, of course, was not the one who had presided over the guilty plea on the aggravated assault charge, was totally unaware of the true nature of the proceeding.

It should also be noted that subsequent to this trial, the Superior Court on November 20, 1981, vacated the order of the Court of Common Pleas of Dauphin County, which had denied the defendant's petition to withdraw his guilty plea, and remanded the case for a hearing on said motion. On December 30, 1981, the Court of Common Pleas approved Karabin's motion to withdraw his guilty plea. A trial was held March 22, 1982, and resulted in a deadlock jury. An appeal is currently pending before the Superior Court of Pennsylvania.

Can it be said, therefore, that as of August 8, 1979, the defendant had been "convicted" of aggravated assault? The prosecutor in asking for the death penalty, so argued:

He has shot another man in the neck seriously wounding him. On two separate dates, March 17, 1978 and April 6, 1978, he was tried on the first charge of murder in December and convicted, was in Lackawanna County Jail on a life sentence facing a life sentence when this murder of Clifford Doolittle took place. He was also facing the charge on Mr. Christiano and on the 17th of January, he pled guilty to that charge. He was awaiting sentence and you heard what Judge Calwell handed down, life plus five to ten years consecutive. There is a man in prison in February of 1979 on a life sentence hanging over his head and potentially more years there.

The trial judge charged on this evidence:

He has two prior convictions involving violence, one death and the other aggravated assault, a shooting in the neck.

The Sentencing Code (42 Pa.C.S.A. § 9711(h)) provides that in reviewing the death sentence, the Superior Court is to consider whether the evidence supports the finding of an aggravated circumstance. We think this duty also falls upon the lower court. It may well be that the jury would have sentenced Karabin to death on the basis of his prior murder conviction, since he was already serving a life sentence and such a finding would have been fully warranted and entirely proper. However, there is no way for this court at this time to invade the deliberative process of the jury and determine what weight the jury gave the testimony of the Christiano shooting. The prosecuting attorney should have brought to the trial court's attention the full circumstances surrounding the defendant's guilty plea and the subsequent efforts to withdraw it, and certainly defense counsel should have strenuously objected and at least cross-examined Mr. Hoffman as to the other relevant docket entries.

Lower Court Opinion at 21–22.

On August 15, 1983, the Commonwealth requested the trial court to reconsider its order vacating the death sentence. A motion seeking a new trial on the basis of after-discovered evidence was filed on behalf of the Appellee on September 9, 1983. After oral argument, the Commonwealth's motion for reconsideration was denied by order dated April 11, 1984. The order also stated that the Commonwealth had thirty days to appeal, running from the date of the decision disposing of the Appellee's motion for a new trial. The Appellee's motion was denied on September 11, 1984.

On October 9, 1984, the Commonwealth filed a notice to appeal to the Superior Court and the Supreme Court. We later transferred the Commonwealth's appeal to this Court to the Superior Court.

The Superior Court affirmed the trial court's order. *Commonwealth v. Karabin*, 362 Pa.Super. 300, 524 A.2d 516 (1987). During the oral argument before the Superior Court, it was apprised of the fact that the Appellee was

subsequently convicted on March 17, 1986 of aggravated assault relating to the Christiano conviction. See, *Commonwealth v. Karabin*, 107 Dauphin County 271 (1987).

The Superior Court concluded that the trial court was correct in vacating the death penalty and imposing a sentence of life imprisonment because the aggravating circumstance, 42 Pa.C.S. § 9711(d)(9) was not supported by the evidence. The Superior Court stated,

> Here, the jury found that two aggravating circumstances outweighed any mitigating circumstances. The aggravating circumstances it cited were (1) that appellant was already serving a life sentence, see 42 Pa.C.S.A. § 9711(d)(10), and (2) a history of felonies, *see id.* § 9711(d)(9). The prior felonies that the Commonwealth introduced at the sentencing hearing included the conviction for which appellant was serving a life sentence and the conviction for the aggravated assault of Christiano. At the time appellant was sentenced in the instant case, however, he had moved to withdraw his guilty plea to the aggravated assault charge. This motion was ultimately granted. Thus, his conviction for aggravated assault was effectively overturned. It is true that appellant was later tried and convicted on the same charge of aggravated assault. This conviction, however, occurred after sentencing in the instant case and cannot support an aggravating circumstance in determining this sentence. Here, the lower court, which was the reviewing court, determined that the aggravated assault conviction should not have been considered by the jury as an aggravating circumstance because appellant had subsequently withdrawn his guilty plea to that charge. Lower Court Opinion at 21–22. Although the jury was properly presented with the other aggravating circumstance, the appellant was serving a life sentence at the time of the commission of this offense, we have no way of determining whether the jury would have found that the one proper aggravating circumstance outweighed any mitigating circumstances.

362 Pa.Super. at 305, 524 A.2d at 519. We granted the Commonwealth's petition for allowance of appeal and now affirm.

■ The Commonwealth contends that the lower courts erred in vacating the death penalty because the jury's initial consideration of the aggravated assault conviction was proper and the Appellee has again been convicted of the crime for which his original conviction was overturned. We agree with the Commonwealth that introduction of evidence of the original conviction was proper. It does not necessarily follow, however, that a felony conviction arising subsequent to the jury's deliberations in the sentencing phase in a death penalty case may be substituted for an earlier conviction which has been overturned.

In *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), we held that, as used in 42 Pa.C.S. § 9711(d)(10), the legislature intended that the word "convicted" mean "found guilty of" and not "found guilty and sentenced." In that case, the defendant had argued that the trial court had erred in allowing the Commonwealth to introduce into evidence as an aggravating circumstance the defendant's guilty pleas to other homicide charges for which no sentences had been imposed.

We applied this reasoning again in interpreting 42 Pa.C.S. § 9711(d)(9) in *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984). In that case, it was alleged that the trial court had improperly permitted the jury to consider as a prior murder conviction a verdict of guilt of murder of the first degree entered three months prior to trial for which judgment of sentence had not then been imposed because post-trial motions were pending. The post-trial motions had been denied subsequent to the trial of the death case.

We held that the trial court had not erred in permitting such evidence in the penalty phase, stating:

> There is no reason to believe that the meaning accorded by legislative references to convictions was not consistent in consecutively enunmerated provisions listing aggravating circumstances within the same subsection of the

sentencing code. *Thus, within 42 Pa.C.S.A. § 9711(d), conviction for purposes of (d)(9) should be construed as having the same meaning as does conviction for purposes of (d)(10), thus allowing verdicts of guilt for which judgments of sentence have not yet been imposed to be considered by the jury as part of a defendant's history of felony convictions involving the use or threat of violence to the person. Under this approach, no error accrues unless the subsequently entered judgments of sentence are overturned on appeal.* This comports with the traditional function of the penalty stage to focus upon aspects of a defendant's character. See *Commonwealth v. Bell,* 417 Pa. 291, 296, 208 A.2d 465, 468 (1965). Character is reflected in verdicts of guilt, regardless of whether judgments of sentence have yet been entered. 505 Pa. at 287–288, 479 A.2d at 464 (Emphasis added).

In *Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985), we reiterated our holding in *Beasley,* supra. We concluded that the fact that a conviction is not "final" because it is at the stage of proceedings involving post-verdict motions or appellate review does not divest a conviction of its character as an aggravating circumstance. We stated further,

*Of course, if the underlying collateral conviction which forms the basis of an aggravating circumstance found by the jury is ultimately overturned, this Court is not without power to vacate the sentence of death in appropriate circumstances.* Nor would we hesitate to stay an execution of sentence pending appellate disposition of the collateral conviction in appropriate circumstances. We need not decide, at this time, the circumstances that would compel this Court to vacate a sentence of death or stay its execution where the collateral conviction is overturned or appealed.

 We are confronted now with the question whether the underlying collateral conviction of aggravated assault which formed the basis of the aggravating circumstance under § 9711(d)(9) found by the jury required the sentence

of death to be vacated once overturned. We conclude that it does under the circumstances of this case. Once a conviction is overturned, evidence of such conviction may not support the jury's finding of an aggravating circumstance.

In the instant case, the only evidence which may properly be considered in support of the jury's finding of § 9711(d)(9) is the evidence of the Appellee's prior conviction for which he was serving a life sentence. This is insufficient to support the finding of that aggravating circumstance. See, *Commonwealth v. Goins*, 508 Pa. 270, 272, 495 A.2d 527 (1985) (held: a single felony conviction for a crime of violence does not suffice to establish a significant history under § 9711(d)(9). See also, *Commonwealth v. Wheeler*, 518 Pa. 103, 541 A.2d 730 (1988); *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987); *Commonwealth v. Frederick*, 508 Pa. 527, 498 A.2d 1322 (1985).

■ Because the evidence failed to support the jury's finding of one of the two aggravating circumstances, the issue then is what is the appropriate remedy. In *Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987), we found that our authority to review death sentences is restricted by 42 Pa.C.S. § 9711(h)(2), which provides,

In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death and remand for the imposition of a life imprisonment sentence.

Although the death penalty statute has been amended recently to permit the Court to remand for a new sentencing hearing, the amendment does not affect the outcome of this case. Thus, the jury's finding of two aggravating circumstances, one of which is unsupported by the evidence, and unspecified mitigating circumstances requires that the death sentence imposed on the Appellee be vacated. *Commonwealth v. Caldwell*, 520 Pa. 69, 550 A.2d 785 (1988); *Commonwealth v. Holcomb*, 508 Pa. 425, 429, 498 A.2d 833 (1985) (plurality), *cert. denied*, 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986).

■ The Commonwealth argues that this Court has the power to take judicial notice of the Appellee's subsequent conviction in Dauphin County for the aggravated assault of Robert Christiano and that this conviction is evidence supporting the invalid aggravating circumstance. We reject the notion that a conviction which occurs after sentencing can resurrect a conviction which was overturned. Although the Appellee was subsequently convicted of the same crime, the aggravating circumstance speaks of "convictions", not of crimes. While we appreciate the Commonwealth's concern that the vitality of the death sentence may depend at times on other convictions withstanding the appeal process, the legislature did not provide for the means of rectifying that concern in the death penalty statute as originally enacted.[1]

The order of the Superior Court is affirmed.

McDERMOTT, J., files a dissenting opinion in which LARSEN and PAPADAKOS, JJ., join.

McDERMOTT, Justice, dissenting.

After this appellant was found guilty of killing a fellow inmate while in prison for a previous murder, he was put to the penalty phase of his trial. The Commonwealth offered as aggravating circumstances a) that he was previously convicted of murder; b) that he was convicted, after pleading guilty, of shooting another person in the neck.

The majority notes, with an unblinking solemnity, "No other evidence of aggravating circumstances was introduced by the Commonwealth" (Majority op. p. 546). One might gather that a previous murder and a plea to another shooting were an unremarkable paucity of effort by the appellant. The majority has, however, other more engaging quiddities to entertain them. This appellant pled guilty on January 17, 1979 to the shooting, and was sentenced on March 27, 1979, after which he filed to withdraw his guilty

1. We observe also that the Commonwealth had knowledge of the fact that the Appellee had filed a petition to withdraw his guilty plea in connection with the aggravated assault connection *prior* to this trial.

plea. His petition was denied and he appealed to Superior Court. His appeal to withdraw his guilty plea was pending, unresolved, in August 1979 when he stood trial for the instant murder. The use of his conviction for aggravating purposes was therefore not improper because we have allowed the use of convictions even before a sentence was imposed, as an aggravating circumstance. *Comm. v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983); *Comm. v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984); *Comm. v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985).

> The majority is properly quite clear upon the point: "We concluded that the fact that a conviction is not 'final' because it is at the stage of proceedings involving post-verdict motions or appellate review does not divest a conviction of its character as an aggravating circumstance." (Majority op. p. 552).

Hence, the unresolved guilty plea was usable here by the Commonwealth as an aggravating circumstance.

So far we can all agree. There is, however, a caveat and not an improper one. To wit: "if any conviction used as an aggravating circumstance is ultimately overturned, this court is not without power to vacate the sentence of death in appropriate circumstances." *Comm. v. Morales, supra.* The question of what are appropriate circumstances was deliberately left open. We did not say that all overturned convictions are eo ipso ground for reversing a death penalty, we simply said that we could and should under appropriate circumstances so act.

The very learned Judge Dowling characterized the instant case as one "extraordinary and almost incredible" and indeed it is. It is not because the appellant was allowed to withdraw his guilty plea of the aggravated assault, but because he was retried and reconvicted and that conviction now stares us in the face. It was, it was not and now it is; which is to say that all that was told the jury was in fact the case: he did as he pled, shot another in the neck. The majority, unwilling to accept the staggering fact that killing while under life sentence for murder is an aggravating

circumstance to which more need not be added are now sending him back that a jury hear what a jury was already told. That is to say that all must be done again that was done before. This is not a case where a conviction was nullified and unusable as an aggravating circumstance, or where it stood alone. It pales beside the other killing by a killer, and seems to me an "appropriate circumstance" for us not to use our power to vacate a sentence. To do so under these circumstances, where nothing has changed from what was, in fact, told the first jury, is "extraordinary and incredible." It is a stultifying sensitivity that can only be satisfied by a perfection we cannot obtain and yet do obvious justice to all concerned. I dissent.

LARSEN and PAPADAKOS, JJ., join in this dissenting opinion.